IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JENNIFER HEARN**                                                                    **PLAINTIFF**

**v.**                                              **CIVIL ACTION # 2:06cv114-KS-MTP**

**ADVANCED BIONICS CORPORATION**                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for relief from judgment [Doc. # 189] filed by the Plaintiff Jennifer Hearn, and the motion to strike [Doc. # 199] filed by the Defendant Advanced Bionics. Based on the reasoning set forth below, the motion for relief from judgment should be **denied** and the motion to strike should be **denied as moot**.

### I. FACTUAL BACKGROUND

Jennifer Hearn suffered damages when her cochlear implant, produced by the Defendant Advanced Bionics, malfunctioned. Hearn was required to undergo surgery to remove the implant and replace it with a different model. After recovery, she filed suit against Advanced Bionics under various theories of negligence and products liability in this Court. Advanced Bionics answered, and moved for summary judgment against Hearn after the close of discovery.

This Court held a hearing on the Defendant's motion for summary judgment on November 5, 2007. After hearing argument, the Court granted in part and denied in part the pending motion. Immediately after the Court's ruling, the parties adjourned to a settlement

1

conference.  Hearn settled her case with Advanced Bionics later that day. The Court entered a judgment of dismissal on December 7, 2007.

On April 24, 2008, counsel for Hearn filed a motion for relief from judgment.  In her motion, the Plaintiff alleges that Advanced Bionics "knowingly misrepresented the true facts of the status of the FDA approval" to induce her into settling her claims. *See* Pl.'s Mot. ¶ 27 [Doc. # 189] (Apr. 22, 2008).  Hearn alleges that she "relied on those representations, misstatements of fact, and outright discovery fraud, to her determent by accepting an amount in settlement far less than what she would otherwise be entitled to." *Id.*  She does not seek to rescind the settlement agreement, but seeks sanctions and damages under various avenues of relief, including Rule 11, Rule 60, and the inherent powers of the Court.

On June 27, 2008, counsel for the Defendant filed a motion to strike the Plaintiff's motion.  Relying on *Bogy v. Ford Motor Co.*, 514 F.3d 419 (5th Cir. 2008), Advanced Bionics argued that in order to seek relief, the Plaintiff must first repudiate the settlement and return the proceeds of the agreement.  The Defendant also argued that none of the remaining procedural avenues for relief are proper.

On July 31, 2008, the Fifth Circuit withdrew its original opinion in Bogy and substituted a second opinion, *Bogy v. Ford Motor Co.*, 2008 WL 2931348 (5th Cir. July 21, 2008) ("*Bogy II*").  In *Bogy II,* the Fifth Circuit made an *Erie* guess as to how the Mississippi Supreme Court would rule if a plaintiff attempted to bring an action for fraud based on a settlement agreement without returning the settlement proceeds.  The appeals court concluded that "Mississippi courts would treat a settlement agreement the same as other contracts," and allow a plaintiff who claims to have been defrauded to either "rescind, in which event he must tender back that which he has

received, or he may affirm the agreement and maintain his action in damages for deceit." *Id*. (quoting *Turner v. Wakefield*, 481 So. 2d 846, 848 (Miss. 1985). The appeals court declined to address any of other issues pending in that litigation, including those related to the precise wording of the settlement agreement or the effect of a final judgment in the prior case.

In light of the Fifth Circuit's decision in *Bogy II*, this Court reopened briefing and permitted both sides an opportunity to supplement their briefs. With the issues of *Bogy II* now resolved, the Hearn maintains the same position, arguing that Rule 11, Rule 60, or the inherent powers of the court should be utilized to grant her relief. Because each offer an independent basis for the Court's action, the Court will consider each below.

## II.  RULE 11

Under Rule 11, the Federal Rules of Civil Procedure require that every "paper" presented to the court with factual contentions "have evidentiary support," and that "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11. The Rule provides for sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id*.; *see also Worrell v. Houston Can! Academy,* 2008 WL 2753405 at *3 (5th Cir. July 16, 2008).

Hearn's reliance on Rule 11 in this case is improper. By its own terms, Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." *See* Fed. R. Civ. P. 11(d). The alleged disclosures and non-disclosures by Advanced Bionics during discovery make up the principal part of the Plaintiff's claims in her motion for relief. Perhaps more importantly, Rule 11 contains a 21-day safe harbor provision

that allows an offending party to remedy the alleged violation before the motion is filed with the court. *See Elliot v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995). By filing their motion after the final judgment has been entered, the Plaintiff in this case denies the Defendant any opportunity to correct the violation before seeking sanctions against them.[1] Numerous other courts have held that Rule 11 cannot be used after a judgment has been entered, and that a motion for sanctions must be submitted prior to dismissal of the case. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). Based on this irregularity, the Court finds that Rule 11 is not the proper procedural vehicle to address the misconduct allegedly made by the Defendant in this case.[2]

### III. RULE 60

The Federal Rules of Civil Procedure permit a court to grant relief from a final judgment based on "fraud...misrepresentation, or misconduct by an opposing party." *See* Fed. R. Civ. P. 60(b)(3). To succeed on a claim under Rule 60(b)(3), a movant must show that (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995). The movant must prove the misconduct by

---

[1] In general, Rule 11 sanctions may be imposed only after the "attorney, law firm, or party" receives "notice and a reasonable opportunity to respond." *Marlin v. Moody Nat. Bank, N.A.*, 2008 WL 2568823 at *2 (5th Cir. June 30, 2008).

[2] If the Court did apply Rule 11, it would be obligated to "utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007). The appropriate sanction in this case would likely be a poor fit to the relief requested by the Plaintiff.

"clear and convincing evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).  A motion under Rule 60(b)(3) "cannot be used as the vehicle for setting aside the [s]ettlement [a]greement, only the Court's judgment." *Natural State Resorts, Inc. v. DKE Entertainment, Inc.*, 2002 WL 384465 at *5 (N.D. Tex. Mar. 7, 2002).

As an initial matter, the Plaintiff has failed to bring forward clear and convincing evidence of fraud or misconduct on the part of the opposing party.  Taking her allegations in the light most favorable to Hearn, the Plaintiff has alleged that Advanced Bionics failed to disclose a subsequent FDA investigation at the conclusion of which the FDA would challenge Advanced Bionics' compliance with the pre-market approval process.[3]  They further allege that company officials who submitted sworn statements misrepresented the product's compliance with FDA regulations, and failed to disclose the extent and nature of the FDA's contemporaneous investigation.

As discussed below, even if the Plaintiff could meet the evidentiary standard of "clear and convincing evidence" of misconduct, it is unclear whether this misconduct prevented her from fully and fairly presenting her case before the Court.  The Court's ruling on the motion for summary judgment would be unchanged even if the Plaintiff's allegations were proven

---

[3] The Plaintiffs would certainly contend that additional discovery would afford them an opportunity to make the evidentiary showing needed to succeed under Rule 60.  Numerous courts in different jurisdictions have granted discovery in very limited circumstances for a Rule 60 motion. *See Southerland v. Irons*, 628 F.2d 978 , 979 (6th Cir. 1980); *Midwest Fin. Corp. v. Metromedia Rest. Group, Inc*., 177 F.R.D. 438, 442 (N.D. Iowa 1997).  The First Circuit has argued that the "strong interest in the finality of judgments leads courts to intervene in a search for evidence of fraud only if there has been some showing that a fraud actually has occurred." *Duhaime v. John Hancock Mut. Life Ins. Co.,* 138 F.3d 1, 7-8 (1st Cir. 1999).  While additional discovery might lead to success under Rule 60, the Court finds that the Rule is not the appropriate avenue to pursue relief based on the logic set forth below.

accurate–the Defendant would still be protected by the preemption defense for items that received and complied with pre-market approval from the FDA. The evidence alleged to be missing, that the FDA had sought additional materials from the Defendant and would claim that some of the devices had violated the terms of pre-market approval, would not alter the Court's prior order. The judgment itself was not entered by the Court on a contested record, but based on the parties agreed settlement. Therefore, the Court finds that the Rule 60(b)(3) motion is not the proper procedural vehicle for the Plaintiff to vindicate her claims. Because the Court cannot use Rule 60(b)(3) as a vehicle to set aside the settlement agreement, the Plaintiff's attempt to proceed under the Rule is improper.

## IV. INHERENT POWERS OF THE COURT

Federal trial courts have "the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). To that end, a federal court can "punish conduct which abuses the judicial process," including assessing fees against a party "when the party practices a fraud upon the court." *Id.* (citing *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). The Fifth Circuit has specifically cautioned that "the threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). The court's inherent authority "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu*

*Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir.1990), *aff'd*, 501 U.S. 32 (1991).[4]

The Plaintiff alleges in responsive briefing that "she seeks redress for fraud on the Court, where the judicial system itself has been victimized." *See* Def.'s Resp. Br. at 5 [Doc. # 205] (July 15, 2008). The Plaintiff argues that because Advanced Bionics has committed a fraud upon the Court, the Court should tap into its inherent powers to remedy the injustice and grant the relief requested. Although the Court undoubtedly has such power, it should only be used when the Court has become the victim of a party's fraud. Yet Hearn cannot show that the Court relied on any of the alleged misconduct by the Defendant. The Court's November 5, 2007 ruling on the motion for summary judgment [Doc. # 135] did little more than follow Fifth Circuit precedent on the preemption issues and the MDA. The Court held that, to the extent that the cochlear implant in question had garnered FDA approval through the pre-market approval process, the Plaintiff could not maintain a state law claim for damages. In other words, Hearn's claims were only preempted to the extent she sought to hold the manufacturer liable for requirements different from or in addition to what was necessary to satisfy the FDA. In *Riegel v. Medtronic, Inc.*, the Supreme Court agreed with this analysis in another case, holding that the FDA's pre-market process established federal requirements and that a plaintiff's state common-law claims of negligence, strict liability, and implied warranty against the manufacturer were preempted. *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008).

In holding that the PMA approval preempted certain state law claims, this Court was

---

[4] The Fifth Circuit has noted that "[g]enerally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *See First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996).

careful not to detail exactly which state law claims were preempted or the precise extent of that preemption.[5] In fact, the preemption itself was wholly dependent on the evidence that the device had received the necessary pre-market approval. If the case had continued, and the evidence had shown either that (1) Advanced Bionics had manufactured the device in a manner that violated the conditions of pre-market approval or (2) Advanced Bionics never had properly obtained pre-market approval for the device that injured Hearn, then the preemption defense would presumably fail. When this Court ruled on the motion for summary judgment, its ruling foreclosed neither of these alternatives for the Plaintiff–it merely framed the issue on the point of law.

In making its November 5, 2007 ruling, this Court did not rely on the affidavits or statements of the Defendant to the extent that the Plaintiff presumes.[6] The Court allowed the

---

[5] In its ruling, the Court stated that despite the FDA preemption:

> However, the state law still exists. State law that exceeds the requirements of the FDA is preempted, but state law that does not exceed the requirements of the FDA, the advanced marketing application and approval, is still out there. If the defendant complied totally with the advanced marketing, then I think that the claims of the plaintiff would be preempted. However, there is **a question as to whether or not the defendant complied**. The state law claims **would still be available** to some extent in spite of some of them being preempted.

*See* Oral Bench Op. Transcr. 8:1-9 (Nov. 5, 2007).

As to the design defect claim, the Court stated that:

> Summary judgment is granted as to the design defect...**assuming the design that was submitted to the FDA is the design that was used**

*Id.* at 10:11-14.

[6] In her brief, the Plaintiff argues that she based her decision to settle "relying on the Court's entry of Partial Summary Judgment on behalf of the Defendant, which again was based

Defendant to raise the issue of preemption based on its assertion that it had obtained pre-market approval, then granted summary judgment only to the extent that the Defendant had complied with PMA approval. The only reliance on the part of the Court was in permitting Advanced Bionics to raise the preemption issue, a decision that would still be proper today, as the Defendant maintains through the current briefing (and in its dispute with the FDA) that it complied with FDA regulations and had the requisite pre-market approval. The point of law made by the Court in the November 5, 2007 ruling, that pre-market approval validly complied with preempts state law claims, remains valid to the present day.

## V. How to Proceed

The Court concludes that the proper procedural vehicle for vindicating the Plaintiff's claim is to file a new action against Advanced Bionics for fraudulent misrepresentation and/or other similar relief.[7] In addition to the problems with Rule 60(b)(3) addressed above, the desire to unwind the Court's judgment yet affirm the settlement agreement makes the Rule a poor fit for the relief requested. Hearn's case-in-chief against Advanced Bionics has been settled, and the Plaintiff has made it clear she intends to retain the benefits of that settlement. Therefore, the appropriate remedy for the current wrong is to file a new suit against Advanced Bionics for the acts and omissions alleged in the Plaintiff's motion for relief from judgment. In the new action,

---

upon false Affidavits, false information, and misstatements of material facts." *See* Pl.'s Br. ¶ 27 [Doc. # 189] (Apr. 22, 2008). The Plaintiff reargues the same contention in its responsive brief to the Defendant's motion to strike "discovery fraud perpetuated on the Plaintiff and this Court"

[7] In making this ruling, the Court makes no factual findings on the merits of the Plaintiff's claim against Advanced Bionics, or about the specific misconduct conduct alleged.

the Plaintiff's requested discovery can go forward, along with any other discovery needed to substantiate the claim of fraud already alleged before this Court.  Advanced Bionics would also be able to raise each of the defenses already mentioned in briefing the current motion, including the language of the settlement agreement and the issue of standing.  Although *Bogy II* does not directly address it, the Fifth Circuit approved of this method of handling similar allegations of misconduct in brokering a settlement agreement when it permitted those plaintiffs to go forward without dislodging the proceeds of their settlement agreement.  The Court finds that a new lawsuit is the clearest and most concise pathway to the relief requested.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for relief from judgment [Doc. # 189] is **denied** and the motion to strike [Doc. # 199] is **denied as moot.**

SO ORDERED AND ADJUDGED on this, the 19th day of August, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE